CLEMENS MOBILE HOMES, INC., A CORPORATION, AND JERALD E. CLEMENS, INDIVIDUALLY, APPELLANTS, V. FRANCIS ANDERSON, APPELLEE.

291 N. W. 2d 238

Filed April 15, 1980. No. 42722.

James R. Hancock and Richard S. Kleager of Hancock Law Offices, for appellants.

Donn C. Raymond and Rick L. Ediger of Raymond, Olsen & Coll, P.C., for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

KRIVOSHA, C. J.

This is a suit which was commenced by appellants, Clemens Mobile Homes, Inc., a closely-held corporation, and Jerald E. Clemens, its majority stockholder, against appellee, Francis Anderson, a minority stockholder and former employee. The suit was in the nature of an action for specific performance to compel Anderson to sell his minority interest in the corporation to Clemens Mobile Homes, Inc., pursuant to a buy-sell agreement previously executed by the corporation and both the stockholders. After taking evidence, the District Court for Scotts Bluff County, Nebraska, determined that the buy-sell agreement did not require a minority stockholder to sell his stock in the corporation upon termination of his employment with the corporation and denied the request for specific performance. For reasons more particularly set out in the opinion, we agree with the action of the trial court and affirm the judgment.

Clemens Mobile Homes, Inc., was incorporated on April 5, 1971, by Jerald E. Clemens, its president and then only stockholder. In the fall of 1971, the appellee, Francis Anderson, Clemens' brother-in-law, moved from California to Scottsbluff, Nebraska, for the purpose of accepting employment with Clemens Mobile Homes, Inc. Within several months of the time Anderson came to work for Clemens, he invested $15,000 in the corporation for which he was to receive a one-sixth interest, the remaining five-sixths

being owned by Clemens. The parties had had some difficulties in the past and, in an effort to avoid any future difficulty, Clemens had the corporation's attorney prepare a buy-sell agreement which was thereafter executed by the corporation and each of the stockholders. There is some dispute in the testimony as to how much discussion was actually had prior to the time the document was executed. Clemens maintained that it was his intention that the contract require Anderson to sell his stock in the event Anderson terminated his employment with the corporation. Anderson denied that fact and maintained that the purpose of the agreement was to insure that Anderson could get back his investment if he so desired.

The language of the agreement is quite clear and unambiguous. It begins by providing, in part, as follows:

> WHEREAS, it is the desire of the Corporation and the Stockholders that, in the event of the death of any one of the Stockholders, or in the event that a Stockholder *desires to sell his stock during his lifetime,* the Corporation shall purchase the shares of stock of the Stockholder in the Corporation . . . .

(Emphasis supplied.) Article II of the agreement, entitled "Purpose of Agreement," further provides as follows:

> The purpose of this agreement is to provide for the purchase by the Corporation of the capital stock owned by any Stockholder on his death, or when the Stockholder desires to leave the Corporation during his lifetime.

Article IV, entitled "Contract for Purchase and Sale," provides:

> Upon the death, prior to the termination of this Agreement, of a Stockholder, or when a Stockholder desires to leave the Corporation during his lifetime the Corporation shall have

the right and is obligated and agrees to purchase the capital stock in the Corporation owned by the Stockholder, and each of the Stockholders agree that his capital stock in the Corporation shall be sold, transferred, and assigned to the Corporation upon the terms hereinafter set forth.

And, finally, Article XIII, entitled "Sale of Stock During Lifetime of Stockholder," reads as follows:

Any Stockholder may during his lifetime elect to sell stock in this Corporation. The Stockholder shall be obligated to sell to the Corporation, and the Corporation shall be obligated to buy from the Stockholder his capital stock at its then market value as determined in ARTICLE V. above. The Stockholder shall give written notice to the Corporation of his desire to sell at least 30 days prior to the date he intends to leave the Corporation.

On May 29, 1973, Anderson voluntarily terminated his employment with the corporation. It is by reason of that termination that this specific action arises. Clemens maintains that the term "leave the Corporation" in the buy-sell agreement requires Anderson to sell his stock to the corporation upon terminating his employment with the corporation. Anderson, on the other hand, maintains that no such obligation exists. Rather, he argues, the agreement simply provides that, in the event that Anderson should ever desire to sell his stock, he must sell it to the corporation and the corporation must purchase the stock. It is the latter interpretation with which the trial court apparently agreed and with which we agree.

There are certain basic rules of construction that must be kept in mind when attempting to review a contract such as this. A written contract expressed in unambiguous language is not subject to interpre-

tation or construction and the intention of the parties must be determined from its contents. *Mid States Engineering v. Rohde*, 182 Neb. 590, 156 N.W.2d 149 (1968); *Reorganized Church of Jesus Christ v. Universal Surety Co.*, 177 Neb. 60, 128 N.W.2d 361 (1964). Where the contract is unambiguous, it is not subject to interpretation or construction. *Timmerman Bros., Inc. v. Quigley*, 198 Neb. 129, 251 N.W.2d 877 (1977); *Inland Drilling Co. v. Davis Oil Co.*, 183 Neb. 116, 158 N.W.2d 536 (1968); *C. G. Smith Constr. Co. v. Cobleigh Electric Co.*, 196 Neb. 711, 246 N.W.2d 55 (1976); *Ely Constr. Co. v. S & S Corp.*, 184 Neb. 59, 165 N.W.2d 562 (1969).

In construing a written instrument for the purpose of ascertaining the intentions of the parties, resort must be had to the instrument as a whole and, if possible, effect must be given to every part thereof. *Mills v. Aetna Ins. Co.*, 168 Neb. 612, 96 N.W.2d 721 (1959). Furthermore, it is important that the contract made by the parties be enforced and a new contract not be created by construction. *Preferred Risk Mut. Ins. Co. v. Continental Ins. Co.*, 172 Neb. 179, 109 N.W.2d 126 (1961).

Appellants' argument is premised upon the proposition that the words "to leave the corporation" mean to terminate employment with the corporation. While, of course, the parties could have contracted for such a provision, no such agreement can be found in this particular contract. It is clear that one may be an employee of a corporation without being a stockholder and, likewise, one may be a stockholder of a corporation without being an employee. Nowhere in this agreement is there any reference made to the employment relationship between the parties and the corporation other than a brief mention in one of the recitals that the death of the parties would affect the corporation. While it may very well have been contemplated by the parties that their relationship as both employees and as

stockholders of the corporation should be and would be coexistent, they failed to so provide in the clear language of the agreement and, therefore, this court should not supply that missing language.

Further, it seems equally reasonable to argue that what the parties intended was to insure that there was a certain market for their interests in the corporation and that such interests were not sold to outsiders. Therefore, if either stockholder desired to sell his interest in the corporation, he was obligated to sell it to the corporation and the corporation was obligated to purchase it. The agreement is more than a first right of refusal. The obligations of the parties are clear and unequivocal. The stockholder desiring to sell must sell *to* the corporation and the corporation must purchase *from* the stockholder. The precipitating factor in the agreement, however, is not the termination of employment with the corporation but, rather, a desire by a stockholder to terminate his relationship with the corporation *as a stockholder* by "leaving the corporation."

Article XIII makes this quite clear when it uses the language "Any Stockholder may during his lifetime elect to sell stock in this Corporation." It is only when the stockholder exercises such election that the provisions of the buy-sell agreement come into effect. The election to sell, however, is in no manner tied to an obligation to be employed. We believe that the language of the agreement is clear and unambiguous and leaves no room for construction. Anderson has apparently not elected to sell his stock and is, therefore, not obligated to do so. There being no such obligation, neither the corporation nor Clemens is entitled to specific performance. The judgment of the trial court in denying such specific performance must, therefore, be affirmed. Having disposed of the case on this point, we need not consider any other

assignments of error raised by the parties.

AFFIRMED.

CLINTON, J., not voting.