WASHINGTON HEIGHTS CO., A NEBRASKA CORPORATION,
APPELLEE, V. JAMES R. FRAZIER, APPELLANT.
409 N.W.2d 612

Filed July 31, 1987. No. 85-887.

128

Thomas J. Culhane of Erickson & Sederstrom, P.C., for appellant.

Keith I. Frederick of Schmid, Ford, Mooney & Frederick, P.C., for appellee.

BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

PER CURIAM.

On September 23, 1983, plaintiff-appellee, Washington Heights Co., a Nebraska corporation, entered into an agreement to purchase the shares of its capital stock then owned by defendant-appellant, James R. Frazier. At about the same time, Richard Schurkamp agreed to purchase Frazier's interest in Grover Square, Ltd., a partnership. Each agreement required the purchaser to pay Frazier a base price which was subject to being increased, but not decreased, by one-third of any "net cash flow" produced by a particular Washington Heights Co. operation and by Grover Square, Ltd., to January 30, 1984, the closing date of the transactions. As a part of the closing, Washington Heights Co. paid $25,000 and Grover Square, Ltd., $1,000 to Frazier as advance distributions of the anticipated net cash-flows. After the closing, Washington Heights Co. concluded that its relevant operation resulted in a cash-flow deficit. Grover Square, Ltd., also concluded its operations resulted in a cash-flow deficit. Each then demanded return of the advance distribution it had made. Upon Frazier's failure to return the distributions, Schurkamp assigned any cause of action he might have to Washington Heights Co., which instituted this suit, seeking $25,000 on its first cause of action for the advance distribution it had made and $1,000 on its second cause of action for the advance distribution Schurkamp had made on behalf of Grover Square, Ltd. Frazier denied Washington Heights Co.'s claims and filed a

counterclaim, alleging that he was entitled to more money than he had received as the result of the net cash-flow produced by the relevant Washington Heights Co. operation. After a bench trial, the court entered judgments dismissing Frazier's counterclaim and awarding Washington Heights Co. the sums it had sought. Frazier appeals to this court only the judgments entered in favor of Washington Heights Co., and claims, in summary, that the trial court erred in (1) treating certain expenditures for capital improvements as ordinary expenses, (2) determining the amounts of certain other expenditures, and (3) failing to properly apportion the latter expenses between Washington Heights Co. and Frazier. We affirm in part and in part reverse and remand with directions.

The causes alleged seek damages for the claimed breach of contracts and, as such, present actions at law. *Buckingham v. Wray*, 219 Neb. 807, 366 N.W.2d 753 (1985). Accordingly, our scope of review is limited to determining whether the judgments entered below are clearly wrong, for the findings and conclusions of the trial court in actions at law tried without a jury have the effect of jury verdicts and will not be set aside unless they are such. *Boren v. State Farm Mut. Auto. Ins. Co.*, 225 Neb. 503, 406 N.W.2d 640 (1987); *Lis v. Moser Well Drilling & Serv.*, 221 Neb. 349, 377 N.W.2d 98 (1985). Moreover, in such a circumstance, it is not within our province to resolve conflicts in or reweigh the evidence; rather, we presume that the trial court resolved any controverted facts in favor of the successful party, and we consider the evidence and all permissible inferences therefrom most favorably to that party. *Kracl v. Aetna Cas. & Surety Co.*, 220 Neb. 869, 374 N.W.2d 40 (1985); *Grubbs v. Kula*, 212 Neb. 735, 325 N.W.2d 835 (1982).

The uncontradicted evidence establishes that over the years, Schurkamp, Frazier, and another shared ownership interests in a number of business operations. At the relevant time, each of these men owned, among other things, an equal share in Washington Heights Co., Grover Square, Ltd., and Frazier-Schurkamp, Inc., a corporation. Washington Heights Co. owned interests in and operated apartments, its principal asset being a 70-percent ownership interest as a joint venturer with Ohio National Life Insurance Company in a complex

called the Washington Heights Apartments. Grover Square, Ltd., also owned and operated an apartment complex. Frazier-Schurkamp, Inc., owned and operated a mechanical contracting business. As the consequence of a long-deteriorated relationship between Schurkamp and Frazier, and of Frazier's desire to withdraw from the business, it was decided that the interests would be divided such that Schurkamp would become the sole owner of the businesses for which he had been the principal manager, Washington Heights Co. and Grover Square, Ltd.; the third man would become sole owner of the business for which he had been the principal manager, Frazier-Schurkamp, Inc.; and Frazier would receive payment for his interests. It is in the context of that background that the contracts at issue in this litigation came into existence.

We note that although the pleadings raise an issue as to the existence and amount of the net cash-flow generated by Grover Square, Ltd., Frazier's attack focuses on the existence and amount of the net cash-flow generated by Washington Heights Co.'s operation of its joint venture with Ohio National Life Insurance Company. As a consequence, the record presents no evidence which permits us to disturb the $1,000 awarded to Washington Heights Co. on its second cause of action. Accordingly, we affirm the trial court's judgment on Washington Heights Co.'s second cause of action and proceed to review the judgment which awarded Washington Heights Co. $25,000 on its first cause of action.

The relevant Washington Heights Co. contract defined "Net Cash Flow" as being

> seventy percent (70%) of the excess of cash receipts over cash expenditures from the operation of Washington Heights Apartments in Omaha, Nebraska for any fiscal year or partial fiscal year from March 1, 1983 to the date of Closing, as determined in accordance with generally accepted accounting principles, except that depreciation of buildings, improvements, and personalty, and loan fees or expenses of refinancing contemplated by this Agreement, shall not be considered as a deduction from cash receipts (or included as cash expenditures) and real estate taxes, insurance premiums, and other items

normally accrued or adjusted through pro-rations to reflect less than a full year of operations shall be pro-rated for the period involved.

Except for the proration language, the foregoing definition of "Net Cash Flow" parallels that used in the joint venture agreement between Washington Heights Co. and Ohio National Life Insurance Company. The contract documents related to this aspect of the transactions provided that the net cash-flow was to be determined by Washington Heights Co.'s accountants and that after such audit was completed, adjustments would be made to reconcile any differences. Frazier reserved the right to conduct an independent audit.

A member of the certified public accountancy firm which had always performed the accounting services required by Washington Heights Co.'s joint venture agreement with Ohio National Life Insurance Company, and did similar work for the parties' other businesses as well, concluded, through the exercise of his own independent judgment, that the operation of the complex known as Washington Heights Apartments during the relevant period resulted in a cash-flow deficit of $51,836. As might be expected, Frazier does not agree, and on this point the evidence is in conflict.

While Frazier did not cause an independent audit to be made, he did dispraise the Washington Heights Co. audit through the testimony of an assistant professor of accountancy from a local university. In the professor's opinion, the operation in question resulted in a total cash-flow during the relevant period of $242,638, leaving $169,847, 70 percent of the total, for distribution as the net cash-flow in accordance with the terms of the agreement. According to him, the difference stems from Washington Heights Co.'s mistreatment of expenditures for capital improvements, as claimed in Frazier's first assignment of error; Washington Heights Co.'s inappropriate calculation of certain other expenditures, as claimed in Frazier's second assignment of error; and Washington Heights Co.'s failure to properly apportion the latter expenses, as claimed in Frazier's third assignment of error.

As to the first matter, the professor, in effect, testified that $172,736 of the expenses for certain replacements, repairs, and

refurbishments of the buildings constituting the Washington Heights Apartments should have been treated as additions to capital rather than as ordinary expenses. In partial support of that position, the professor points to the fact that while only $203,987 was budgeted for such work during the relevant fiscal year, $304,509 was expended. That additional sum of approximately $100,000 is 49 percent greater than the amount budgeted. Moreover, the expenditures exceeded the prior year's like expenditures by approximately $140,000. However, the professor admitted that there were several ways in which to determine whether an item should be treated as an addition to capital or as an item of ordinary expense and that there are bases for a difference of opinion in that regard. He further admitted that if he were doing an audit, he would have considered it important to determine that he was aware of all the facts by consulting with Washington Heights Co.'s accountant; however, as he was not doing an audit, he did not take that step. Moreover, he conceded that the consistency principle of accounting holds that financial statements should be prepared in a manner consistent with those prepared for prior like periods.

Washington Heights Co. adduced evidence that the questioned expenses had always been treated in the past as they were on the present occasion and that Frazier and the other owner were aware of the expenditures being made. In fact, there was general agreement among the owners that it was important to keep up the appearance of the complex during the period of negotiations so as to keep it marketable. Further, while it is true the questioned expenses exceed the amount budgeted, such also occurred during the 1982-83 fiscal year, when the budget called for an expenditure of $117,000 but an additional $76,536, approximately 65 percent more, was actually expended, for a total of $193,536.

Given that state of the record, it cannot be said the trial court was clearly wrong in concluding the evidence supported the treatment Washington Heights Co. gave the questioned expenditures. There is therefore no merit to Frazier's first assignment of error.

In connection with the second assignment of error, Frazier

claims that in computing the net cash-flow Washington Heights Co. deducted certain expenses twice. The professor testifying on Frazier's behalf said he thought "the real estate taxes payable, the interest payable, the accrued items [were] double-counted." That witness did not, however, explain how he reached that conclusion.

On the other hand, Washington Heights Co.'s accountant explained that as the books had been kept on an accrual basis, a series of conversions had to be made to reflect the corporation's actual cash-flow, for in the accrual method of accounting one is not concerned with when an item of expense is actually paid. He testified that he made the conversions required to reflect the actual cash payments made during the year, and deducted nothing twice. Moreover, the professor conceded that the method used by Washington Heights Co. was "one approach that could be taken to calculat[e] cash flow."

Again, under that state of the record it cannot be said the trial court was clearly wrong in concluding that the evidence supported Washington Heights Co.'s accounting in that regard. There is therefore no merit to the second assignment of error.

In arguing his third assignment of error Frazier urges that Washington Heights Co. failed to prorate the real estate taxes, insurance premiums, interest, and other accrued expenses to reflect that he had an interest for only 11 months of the fiscal year which began on March 1, 1983, and ended February 29, 1984.

Resolution of this aspect of the case depends upon the meaning of the phrase "real estate taxes, insurance premiums, and other items normally accrued or adjusted through pro-rations to reflect less than a full year of operations shall be pro-rated for the period involved," as used in the contract definition of "Net Cash Flow." The meaning of an unambiguous contract presents a question of law. See *Martin v. Reavis*, 117 Neb. 219, 220 N.W. 238 (1928). This court has an obligation to reach independent conclusions on questions of law. *Johnston v. Panhandle Co-op Assn.*, 225 Neb. 732, 408 N.W.2d 261 (1987). It is also the rule that if a written contract is expressed in unambiguous language, it is not subject to interpretation and construction, and the intention of the parties

must be determined from the contents of the contract document. *Clemens Mobile Homes, Inc. v. Anderson*, 206 Neb. 58, 291 N.W.2d 238 (1980).

The unambiguous meaning of the phrase in question is that, as only 11 months of the fiscal year had passed at the time of closing, only eleven-twelfths of certain designated expenses were to be charged against that period's income. The agreement was obviously so structured in order that Frazier not be made to pay expenses attributable to a period of time during which he had no ownership interest. It is equally clear the phrase applies to real estate taxes and insurance premiums because it says so in exactly those words.

What is not clear is what the parties intended as being within the ambit of the words "and other items normally accrued or adjusted through pro-rations." The applicable rule in such a situation is that parol evidence is admissible to explain vague language contained in a written contract. See, *Lovelace v. Stern*, 207 Neb. 174, 297 N.W.2d 160 (1980); *Olds v. Jamison*, 195 Neb. 388, 238 N.W.2d 459 (1976).

The intent of the parties in that regard is evidenced by Schurkamp's testimony of his understanding that only eleven-twelfths of the interest and taxes were to be charged against the cash-flow. Thus, only eleven-twelfths of the real estate taxes, insurance premiums, and interest should have been deducted. Washington Heights Co.'s accountant testified, however, that he deducted the amount of interest, taxes, and expenses which had accrued and were owing as of January 30, 1984, notwithstanding the fact such may have been attributable to the entire year. Thus, Washington Heights Co. did not prorate the real estate taxes, insurance premiums, and interest as the contract required, and to that extent Washington Heights Co.'s accounting violates the terms of the agreement. So far as the record reflects, neither did the professor testifying for Frazier make any prorations in computing his version of the net cash-flow.

Thus, Frazier's third assignment of error is meritorious; the evidence fails to support the judgment which awarded Washington Heights Co. $25,000 on its first cause of action.

Accordingly, that judgment is reversed and set aside and the

cause remanded for further proceedings consistent with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.