OSMOND STATE BANK, A NEBRASKA BANKING CORPORATION,
APPELLEE, V. UECKER GRAIN, INC., A NEBRASKA CORPORATION,
APPELLANT.
419 N.W.2d 518

Filed February 19, 1988.   No. 86-094.

Lynn D. Hutton, Jr., of Hutton and Freese, for appellant.

Bruce D. Curtiss of Curtiss Law Office, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

This law action arose out of defendant-appellant, Uecker Grain, Inc.'s, failure to pay the full sale price for PIK corn sold to Uecker Grain by the plaintiff-appellee, Osmond State Bank. After a bench trial, the district court divided the disputed amount of $9,064.03 as follows: Osmond State Bank, $5,763.30; and Uecker Grain, $3,300.73. We affirm.

Uecker Grain claims that the trial court erred in failing to find (1) that the parties had an oral agreement for Uecker Grain

to be paid for all feed and supplies furnished by it to one Elvin Krohn; and (2) that Uecker Grain was a third-party beneficiary creditor under written agreements between the bank and Krohn. The assignments will be discussed in inverse order.

Osmond State Bank claims in its brief that it is entitled to all of the disputed funds. The bank did not cross-appeal, and its claim will not be considered. "[A]n appellee may not question a portion of a judgment at issue on appeal in the absence of [the appellee's] having properly filed a cross-appeal." *Wittwer v. Dorland*, 198 Neb. 361, 366, 253 N.W.2d 26, 29 (1977). See, also, *Wellman v. Birkel*, 220 Neb. 1, 367 N.W.2d 716 (1985).

In reviewing an action at law tried without a jury, it is not the role of the Supreme Court to resolve conflicts in or reweigh the evidence. Rather, the court presumes that the trial judge resolved any controverted facts in favor of the successful party. This court will also consider the evidence and the permissible inferences therefrom most favorably to the successful party. Moreover, in such actions the findings and conclusions of the trial judge have the effect of a jury verdict and will not be set aside unless clearly wrong. *Caeli Assoc. v. Firestone Tire & Rubber Co.*, 226 Neb. 752, 415 N.W.2d 116 (1987); *Third Party Software v. Tesar Meats*, 226 Neb. 628, 414 N.W.2d 244 (1987); *Washington Heights Co. v. Frazier*, 226 Neb. 127, 409 N.W.2d 612 (1987); *Kimberling v. Omaha Public Power Dist.*, 225 Neb. 744, 408 N.W.2d 269 (1987).

The operative facts in this case emanated from Elvin Krohn's unfortunate financial situation in the fall of 1982. For years, Krohn charged grain, seed, fertilizer, and other items for his farm operation on an open account with Uecker Grain. Any balance owing in the fall of the year was paid from that fall's harvest. Additional operating funds were supplied through loans from Osmond State Bank. The bank held a security interest in growing crops and livestock. In 1982 and 1983 Krohn also had an indebtedness with the Farmers Home Administration, but that is not material to this action.

As of March 11, 1983, when Krohn applied to the Osmond State Bank for operational funds for the 1983 crop-year, Krohn owed the bank approximately $64,000 and Uecker Grain between $5,300 and $5,400. The Osmond bank was reluctant to

loan Krohn any further money. In a March 11, 1983, letter to the bank, Krohn proposed to borrow operational funds for the 1983 crop-year under certain conditions. James Stratton, president of the Osmond State Bank, verbally discussed Krohn's plight with him. On March 24, 1983, Stratton sent a letter to Krohn in which the bank conditionally agreed to loan Krohn $6,750 so Krohn could plant soybeans and alfalfa, buy hail insurance, and maintain other parts of the farm free from weeds. To obtain the loan, Krohn had to agree to sell certain livestock, 3,000 bushels of corn, and some farm equipment, all of which was located on the farm. It was anticipated that the items would bring $38,375. From the sale proceeds, Uecker Grain was to be paid $5,284, and other creditors were to be paid an aggregate sum of $10,037. The balance of the proceeds was to be applied to Krohn's loan with Osmond State Bank, which would reduce that item to approximately $41,000.

Krohn had failed to pay the balance of his Uecker Grain account in the fall of 1982. However, Uecker Grain continued to extend credit to Krohn through June 30, 1983, when Krohn's credit was terminated. From the proceeds of the sale of part of the items listed in the bank's letter of March 24, 1983, Krohn paid Uecker Grain $1,500 on July 29, 1983. Thereafter, Uecker Grain again extended credit to Krohn.

Meanwhile, sometime prior to March 11, 1983, Krohn signed up to participate in the U.S. Department of Agriculture's payment-in-kind program (PIK). By meeting the terms of that program, Krohn was entitled to receive 7,873 bushels of corn from USDA for not planting a crop on part of his farm. Uecker Grain was designated as the holding elevator for the PIK corn Krohn was to receive. On May 6, 1983, Krohn went to the Agricultural Stabilization and Conservation Service office and, in writing, assigned his PIK corn entitlement to Osmond State Bank. The bank accepted the assignment on May 9, 1983, by countersigning the assignment document at the ASCS office.

On March 12, 1984, Osmond State Bank, through its president, presented the assignment to Uecker Grain and sold the PIK corn involved for $23,540.27. On March 22, 1984, when Stratton, on behalf of Osmond State Bank, appeared at Uecker Grain to collect the sale price from Uecker Grain, he

was handed a check for $14,476.24, which he declined to accept. Glenn Uecker, president of Uecker Grain, testified that $9,064.03 of the sale price was withheld in satisfaction of Krohn's account with Uecker Grain. Subsequently, by stipulation, the $14,476.24 check was accepted by the bank without prejudice to its claim for the balance of the sale price.

Under its second assignment of error, Uecker Grain claims that the letters between Krohn and Osmond State Bank constituted a contract.

Uecker Grain further claims that it was a third-party beneficiary creditor under that contract and, therefore, had the right to retain the $9,064.03 from the PIK corn sale to satisfy Krohn's account.

To resolve this case, we need not determine whether the letters constituted a contract or whether Uecker Grain was a third-party beneficiary. Assuming arguendo that the letters between Krohn and Osmond State Bank did constitute a contract and that Uecker Grain was a third-party beneficiary, Uecker Grain still was not entitled to retain $9,064.03 from the PIK corn sale. Both letters specifically limited payment of Krohn's account with Uecker Grain to proceeds of the sale of corn, livestock, and farm equipment *located on Krohn's farm*. Those terms could not be extended or enlarged.

> "A third-party beneficiary's rights depend upon, and are measured by, the terms of the contract between the promisor and promisee. The right of a third party benefited by a contract to sue thereon rests upon the liability of the promisor, which must affirmatively appear from the language of the instrument when properly interpreted or construed; and the liability so appearing cannot be extended or enlarged on the ground alone that the situation and circumstances of the parties justify or demand further or other liability. . . ."

*Haakinson & Beaty Co. v. Inland Ins. Co.*, 216 Neb. 426, 431, 344 N.W.2d 454, 458 (1984). See, also, *Dealers Electrical Supply v. United States F. & G. Co.*, 199 Neb. 269, 258 N.W.2d 131 (1977).

The intent of both Krohn and Osmond State Bank, as drawn from the unambiguous language of the letters, was to pay

Uecker Grain only with the proceeds of the sale of corn, livestock, and farm equipment *on the farm*. Since the language of the letters is unambiguous, neither Krohn's nor Stratton's parol evidence of intent can be considered. "[I]f a written contract is expressed in unambiguous language, it is not subject to interpretation and construction, and the intention of the parties must be determined from the contents of the contract document." *Washington Heights Co. v. Frazier*, 226 Neb. 127, 133-34, 409 N.W.2d 612, 616 (1987); *Clemens Mobile Homes, Inc. v. Anderson*, 206 Neb. 58, 291 N.W.2d 238 (1980).

Uecker Grain's second assignment of error is without merit.

In its first assignment of error, Uecker Grain claims that it and Osmond State Bank entered into an oral agreement that Uecker Grain would be paid for all feed and supplies furnished by Uecker Grain to Krohn. The trial court allowed Uecker Grain to keep $3,300.73 of the PIK entitlement funds. This was for corn purchased on credit from Uecker Grain by Krohn after October 11, 1983. That ruling was based upon the trial court's finding that there was an oral agreement between Uecker Grain and the Osmond State Bank wherein Uecker Grain was to extend credit to Krohn upon the bank's promise to pay for the corn from the PIK entitlement. The court noted that the bank held a security interest on the cows that consumed the corn. Since Osmond State Bank did not file a cross-appeal, we need not consider the correctness of the trial court's rulings in regard to the $3,300.73 awarded Uecker Grain.

The trial court found no other oral agreement between Uecker Grain and the Osmond State Bank. Having carefully reviewed the record, we cannot say that the trial judge's finding in that regard is clearly wrong.

The judgment of the trial court is affirmed in all respects.

AFFIRMED.