JOE KUBISTA, APPELLANT, V. HAROLD JORDAN, DOING BUSINESS AS JORDAN PLUMBING & HEATING, APPELLEE.

422 N.W.2d 78

Filed April 15, 1988.   No. 86-417.

Virginia G. Johnson, for appellant.

Loren L. Lindahl, for appellee.

BOSLAUGH, CAPORALE, and GRANT, JJ., and RIST and CLARK, D. JJ.

GRANT, J.

Plaintiff, Joe Kubista, appeals from the district court for Saunders County, where he brought an action against Harold Jordan, doing business as Jordan Plumbing & Heating, for breach of contract. The plumbing which defendant installed in plaintiff's new residence was inoperable in that, due to the relative elevation, it was impossible for sewage to flow from the house to the existing sewerline in the adjoining street. The trial court, after a trial to the court, found generally in favor of the defendant on all issues. We affirm.

In August of 1983, construction of plaintiff's new residence in Wahoo, Nebraska, began. Plaintiff had selected a floor plan from a booklet of floor plans and had modified the plan himself to fit his needs. Plaintiff had hired a firm he described as cabinetmakers and builders to be the coordinator of the construction project.

The excavation for the basement and the installation of the basement walls and footings were completed by the end of August. The concrete basement floor was not poured at that time. Plaintiff testified that the construction coordinator knew that plumbing was to be installed in the basement and that

plaintiff did not know how the coordinator knew how deep to have the basement dug.

Plaintiff hired defendant to install plumbing in the new house. Defendant testified he had two oral contracts with plaintiff, the first to install plumbing in the house, and the second, entered into later, to connect the house sewer to the existing city line. Installation of the house plumbing began in early September and was completed to the point where a pipe was installed on the excavated floor and "stubbed out" a few inches from the house below the installed footings. Defendant testified that it was normal procedure to run the sewer pipe out of the house under the footings. The basement floor was apparently then poured. Plaintiff paid defendant for this work.

Defendant testified that plaintiff contacted him a second time, with regard to the hookup of the sewerline and waterline, in the first part of October. A different contractor began digging a trench from the house to the street so that a sewerline could be run from the stubbed-in pipe down to the city sewerline. The pipe must protrude from the house at a higher level than the city sewerline in order to permit gravity flow. After defendant had laid a couple of sections of pipe, he then realized that the stubbed-out line was too deep to allow a downhill flow to the city line.

After defendant informed plaintiff of the problem and explained to him that the problem could be corrected by either installing a sewage pump or tearing up a section of the basement floor and raising the pipe to a sufficient level, plaintiff dismissed defendant. Plaintiff then hired new contractors to correct the problem. The general contractor arranged to cut the concrete floor in the basement and arranged for the existing floor to be partially removed. The plumber then raised the pipes under the basement floor to match the necessary sewer line. To get enough height, the plumber testified, "Well, we broke the floor out and broke the center footing, we had to break it out, and we took a little bit of the underside of the front footing to get enough height."

On appeal to this court, plaintiff assigns as error: (1) The district court erred in not finding that an oral contract existed between plaintiff and defendant and was breached by

defendant's defective performance, and in dismissing plaintiff's petition; (2) the district court erred in failing to award damages to plaintiff for the expense he incurred in correcting the defective performance of defendant, which runs counter to the preponderance of evidence; (3) the district court erred in not finding that the plaintiff had met his burden of proof.

At trial, plaintiff testified that at the time he hired defendant to install the plumbing, he provided defendant with a copy of the floor plan of the first floor and the basement. While testifying, plaintiff noted that the floor plan, which was admitted into evidence, included an instruction stating: "3. Third Street sewer line will be used for the drainage pipe." Plaintiff further testified that he had arranged at the outset for defendant to do both the plumbing and the sewerline. Plaintiff stated that he gave defendant a choice between two contractors to dig the trench for the sewerline from the house to the city line in the street. With regard to the depth at which the plumbing protruded from the house and the proper depth for the sewerline, plaintiff testified as follows:

A. . . . I never mentioned anything about the depth of the city sewer because whatever I asked him he was able to answer and when I asked about the idea of cap plumbing he said, "We have been doing it for 20 years." And, well, he wanted me — it was like his way of saying, "I have been at this a long time, I know what to do or what should be done."

Q. You had just mentioned that you discussed the depth or you did not discuss the depth of the sewer with Mr. Jordan, is that correct?

A. No, no, I didn't because how was I to know where he should — what the depth should be in the house, that is in the basement and then how much they allow for drainage because if I was a true contractor or plumbing contractor I would not, that would be like subcontracting and, of course, I was a customer not a contractor.

Q. At the time of this conversation did you have any knowledge as to what the depths of the city sewer was on West Third Street?

A. Well, I did check in July of 1983 with the light and

water commissioner, Don Peterson, and he checked a large map that they have there and he said it's approximately seven feet deep.

Q. Did you communicate this knowledge to Mr. Jordan?

A. No. No, I didn't because when I asked about other things, well, he made me feel like I was asking questions that he knows by heart.

Defendant, Harold Jordan, testified regarding the depth of the stubbed-in pipe he installed:

Q. Have you done work like this before where you have hooked up to city utilities?

A. Oh, yes.

Q. Do you generally check as to the depth of the existing utility?

A. Yes, before we started we asked Mr. Kubista and he told us six feet deep.

Q. Do you generally rely upon information given to you by home owners such as Mr. Kubista?

A. Yes.

Q. Are you aware of the fact that the city has information pertaining to the depth of their utilities?

A. Yes.

. . . .

Q. Which would you deem the more appropriate source for that information?

A. Well, we asked him, Mr. Kubista, and he told us he had got this information from the city, so it would be one in [sic] the same.

With regard to plaintiff's first assignment of error, defendant has conceded that a contractual relationship exists between them. The question is whether the services were defectively performed, resulting in a breach. The trial court, in holding that "[u]pon consideration of the evidence, the Court finds generally in favor of the Defendant on all issues," apparently ruled that the performance was satisfactory and thus there was no breach.

Plaintiff seeks damages for breach of contract, and, as such, the suit presents an action at law. See *Washington Heights Co.*

*v. Frazier*, 226 Neb. 127, 409 N.W.2d 612 (1987). As a result, this court's scope of review is limited to determining whether the judgment entered below is clearly wrong. The findings and conclusions of the trial court in actions at law tried without a jury have the effect of jury verdicts and will not be set aside unless they are clearly wrong. *Washington Heights Co. v. Frazier, supra; Boren v. State Farm Mut. Auto. Ins. Co.*, 225 Neb. 503, 406 N.W.2d 640 (1987).

In *Buell, Winter, Mousel & Assoc. v. Olmsted & Perry,* 227 Neb. 770, 772, 420 N.W.2d 280, 282 (1988), this court stated:

[I]n an action at law tried without a jury, it is not the role of this court to resolve conflicts in or reweigh the evidence, and this court will presume that the trial court resolved any controverted facts in favor of the successful party and will consider the evidence and permissible inferences therefrom most favorably to that party.

See, also, *Washington Heights Co. v. Frazier, supra.*

After considering the evidence, the trial court apparently found that plaintiff did, in fact, communicate with defendant regarding the depth at which the pipe should exit the house and that defendant was justified in relying on this communication. The depth of the basement, as dug, was not controlled by defendant. Defendant's installation of the plumbing at the level of the basement when he was directed to start his work could be considered performance of the contract in a good and workmanlike manner. Defendant merely performed the job he was instructed to do. Viewing the evidence in light most favorable to defendant, we cannot say the trial court's findings are clearly wrong.

Plaintiff next assigns as error that the trial court erred in failing to award damages for expenses plaintiff incurred in correcting the allegedly defective performance of defendant. Since we have held that there was no defective performance, and therefore no breach, the issue of damages is not reached.

Plaintiff's third assignment of error contends that the trial court erred in not ruling that plaintiff had met his burden of proof. In substance, this assignment is simply a restatement of the first assignment. For the above-stated reasons, this

assignment of error is without merit.

The findings of the trial court are affirmed.

AFFIRMED.