JAMES J. STUMPF, CHAPTER 7 TRUSTEE ON BEHALF OF THE
CHAPTER 7 BANKRUPTCY ESTATE OF DENNIS SELZER AND
WANDA SELZER, APPELLANT, V. NINTENDO OF AMERICA, INC.,
AND NINTENDO CO., LTD., APPELLEES.

601 N.W. 2d 735

Filed October 22, 1999.   No. S-98-376.

Thomas A. Grennan, of Gross & Welch, P.C., for appellant.

Brian D. Nolan and Amy Sherman LaFollette, of Nolan, Roach, Olson, Fieber & Lautenbaugh, for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## NATURE OF CASE

This is a products liability action in which the plaintiff, James J. Stumpf, a trustee on behalf of the chapter 7 bankruptcy estate of Dennis Selzer and Wanda Selzer, sued the defendants, Nintendo of America, Inc., and Nintendo Co., Ltd. (hereinafter jointly referred to as "Nintendo"), for damage from a house fire allegedly caused by a rechargeable battery pack manufactured by Nintendo. This case presents an evidentiary issue: Did the trial court abuse its discretion in overruling Stumpf's motion in limine to exclude all references to Farm Bureau Insurance Company (Farm Bureau) and specifically by permitting one of Nintendo's witnesses, Colin Moss, to disclose that he worked for Farm Bureau? We answer this question in the affirmative and, accordingly, reverse, and remand for a new trial.

## BACKGROUND

In December 1991, the Selzers purchased a Nintendo "Game Boy" video game and a Nintendo rechargeable battery pack. A fire severely damaged the Selzer home on January 10, 1992. The Selzers had an insurance policy with Farm Bureau, and on January 11, a Farm Bureau adjuster, Moss, visited the scene of the fire. Later, Moss hired Kenneth Ward to investigate the cause of the fire, and Ward hired James Belina as a consultant. The Selzers filed a products liability action, and Moss, Ward, and Belina testified at trial.

At trial, the cause of the fire was disputed. Stumpf's expert witness, Ward, opined that the Nintendo rechargeable battery pack caused the fire. Belina, another expert for Stumpf, stated that the overheating of the battery pack could have caused a fire. Nintendo's witness, Ron Liem, did not attribute the cause of the fire to the Nintendo battery pack.

Stumpf filed a motion in limine and made several arguments outside the presence of the jury to exclude any mention of the Selzers' insurance coverage through Farm Bureau. Specifically, Stumpf requested that if Nintendo called Moss as a witness, Moss should be identified only as a representative of the Selzers, not as an employee of Farm Bureau. Nintendo wanted to call

Moss to expose Moss' involvement, which had allegedly hampered the investigation, and any possible bias by Ward and Belina because of previous relationships with Moss. Although the motion in limine was overruled, the trial court did restrict the examination of Moss, stating:

> I've had a chance to review the deposition of Mr. Moss and I'm going to limit it this way, because I don't know how you can steer around that area of danger that will result in the jury getting information on payment by an insurance company, insurance coverage, so that they get that idea.
>
> So this is the limitation for when you call Mr. Moss. He can be called to the stand. You can ask who he's employed by and how long. You can ask did he hire Mr. Kenneth Ward, ask him when he was hired or — when he was hired to do the investigation. You can ask did he hire Mr. Belina, and when that was. You can ask him when he first had notice of any loss by the Selzers for the fire. You can ask how many times he's hired Mr. Ward, and in the deposition it says one time. You can ask him, to his knowledge, how many times that he knows he's been hired by Farm Bureau at any other times, because he indicated that other persons have hired him.
>
> . . . You can go into that, that's about the extent, so that you don't get in the area other than hiring the person, how many times he has, and why he waited. So if you keep those in line, well, then you'll steer clear of any error that will cause this to mistrial.

Under these restrictions, Moss testified, in relevant part, as follows:

Q. Would you state your name for the record, please?

A. Colin Moss.

Q. Mr. Moss, where are you employed?

A. I work for Farm Bureau Insurance Company of Nebraska.

Q. And how long have you been employed there?

A. Eighteen years.

Q. When was your first notice as to this occurrence?

A. The morning after the fire, that Saturday morning.

Q. And, subsequently, did you hire a Mr. Ken Ward?

A. Yes, I did.

Q. And did you hire Mr. Belina?

A. Not directly, but I approved Mr. Ward's hiring of him, yes.

Q. And had you hired either of these gentlemen in the past?

A. Mr. Ward had worked on one arson fire for me previously, yes.

Q. Okay. Now, when you said you were first aware of it, on what date?

A. It would be the Saturday morning after. The fire was on Friday evening, January whatever. January 11th.

Q. And you were on the site or on the premises at that time, weren't you?

A. Well, when — my first knowledge of it, no. I was the agent who came to it.

Pursuant to the jury verdict, a judgment was entered in favor of Nintendo and against Stumpf. It is from this judgment that Stumpf appeals.

## STANDARD OF REVIEW

The admissibility of evidence is reviewed for an abuse of discretion where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court. *Deuth v. Ratigan*, 256 Neb. 419, 590 N.W.2d 366 (1999). An abuse of discretion occurs when the trial judge's reasons or rulings are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *State v. Krutilek*, 254 Neb. 11, 573 N.W.2d 771 (1998); *Greenwalt v. Wal-Mart Stores*, 253 Neb. 32, 567 N.W.2d 560 (1997).

## ASSIGNMENT OF ERROR

Stumpf's sole assignment of error is that the trial court abused its discretion in denying his motions to exclude evidence that Moss was affiliated with Farm Bureau from which the jury could infer that the Selzers were compensated for their loss by insurance.

## ANALYSIS

■ As a general rule, we give wide latitude to the trial judge in determining the admissibility of evidence because he or she is in the best position to address the impact and effect of evidence based upon what the trial judge perceives from the live proceedings of a trial, while we can review only a cold record. See *State v. Dixon*, 240 Neb. 454, 482 N.W.2d 573 (1992). Nonetheless, in the instant cause, we are called upon to decide whether the district court abused its discretion when the court determined that the probative value of disclosing Moss' employment with Farm Bureau was not substantially outweighed by the prejudicial effect of injecting insurance into the proceeding.

■ Neb. Rev. Stat. § 27-403 (Reissue 1995) provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Clearly, not every mention of insurance is inadmissible or unfairly prejudicial. "It is not every casual or inadvertent reference to an insurance company in the course of trial that will necessitate a mistrial. Whether the disclosure is such as to constitute error depends essentially upon the facts and circumstances peculiar to the case under consideration." 21B John Alan Appleman & Jean Appleman, Insurance Law and Practice § 12834 at 471-73 (1980).

■ Evidence, however, which suggests a decision on an improper basis is unfairly prejudicial. *State v. Perrigo*, 244 Neb. 990, 510 N.W.2d 304 (1994). The prejudice that potentially resulted from disclosing Moss' employment with Farm Bureau is that the jury was at least inferentially informed that the Selzers' losses were covered by insurance. As noted in 21B Appleman & Appleman, *supra*, § 12841 at 573-79:

Generally the fact that one or more of the litigants is insured is inadmissible. Accordingly, the fact that the plaintiff has insurance of any type, which might be beneficial to him, is irrelevant. Such insurance generally does not adhere to the benefit of the tortfeasor.

Where a suit is brought in the name of an individual to recover for the destruction of property, evidence has been

held inadmissible to show that the plaintiff had been indemnified for such loss by some insurance company, even though, in fact, the present proceeding is by way of subrogation for the benefit of the company which so indemnified him . . . .

While we recognize that property insurance rather than liability insurance is at issue in this cause, any reference to insurance where its presence or absence is tangential to the facts at issue should be carefully scrutinized. See, e.g., *Delicious Foods Co. v. Millard Warehouse*, 244 Neb. 449, 507 N.W.2d 631 (1993); *Patterson v. Swarr, May, Smith & Anderson*, 238 Neb. 911, 473 N.W.2d 94 (1991); *Kresha v. Kresha*, 216 Neb. 377, 344 N.W.2d 906 (1984); *Motis v. Manning*, 200 Neb. 593, 264 N.W.2d 844 (1978).

In *Patterson v. Swarr, May, Smith & Anderson*, 238 Neb. at 917, 473 N.W.2d at 99, a legal malpractice action, an attorney's admission was received into evidence that the attorney had " 'really screwed this thing up. . . . Sue the "h" out of us and we got insurance and get yourself a lawyer.' " The trial court overruled the defendants' motion for mistrial, judgment was entered, and the defendants' motion for a new trial was sustained because of the reference to insurance. We considered the prejudicial effect of the reference to insurance under a Neb. Rev. Stat. § 27-411 (Reissue 1995) analysis and concluded that the trial court did not err in granting a new trial. Importantly, we noted that the reference to insurance added nothing to the admission:

Severing the statement that the defendants had insurance, [the attorney's] statement reads: "Ron, we have really screwed this thing up. . . . Sue the 'h' out of us . . . and get yourself a lawyer." The fact that the defendants had insurance adds nothing to [the attorney's] admission of fault. Therefore, its only purpose was to inject into the trial the prejudicial fact that the defendants had insurance.

238 Neb. at 918, 473 N.W.2d at 99.

Similarly, the fact that Moss worked for Farm Bureau has little or no probative value but much prejudicial effect under a § 27-403 analysis. Nintendo argues that its primary purpose in calling Moss was to show agency (that Moss was working on behalf of the Selzers), control (that Moss, as the Selzers' agent,

had control of the fire scene), and bias or prejudice (of the Selzers' expert witnesses, who were working specifically upon the orders of Moss for the Selzers' benefit). The evidence presented at trial, however, is of little probative value on the primary issues of bias and control, to wit:

Q. Would you state your name for the record, please?

A. Colin Moss.

Q. Mr. Moss, where are you employed?

A. I work for Farm Bureau Insurance Company of Nebraska.

Q. And how long have you been employed there?

A. Eighteen years.

Q. When was your first notice as to this occurrence?

A. The morning after the fire, that Saturday morning.

Q. And, subsequently, did you hire a Mr. Ken Ward?

A. Yes, I did.

Q. And did you hire Mr. Belina?

A. Not directly, but I approved Mr. Ward's hiring of him, yes.

Q. And had you hired either of these gentlemen in the past?

A. Mr. Ward had worked on one arson fire for me previously, yes.

Moreover, Nintendo's purported purpose to show Moss' control or the expert witnesses' alleged bias could easily have been accomplished without reference to insurance. As Stumpf suggested in his argument at the motion in limine hearing, this purpose could have been achieved by merely indicating that Moss was Selzers' representative and that Ward had been hired by Moss one prior time.

The case of *Foulk v. Kotz*, 138 Ariz. 159, 673 P.2d 799 (Ariz. App. 1983), provides an excellent example of how a party may reveal potential bias without injecting the prejudicial fact that one of the parties had insurance coverage. In *Foulk v. Kotz*, the trial court restricted the plaintiffs' cross-examination of a defense witness, an insurance adjuster. The witness-adjuster had taken a statement of Foulk's in which Foulk acknowledged he may have caused his own injury. The plaintiffs alleged the restriction on cross-examination to be error. In a pretrial ruling,

the trial court disallowed any questions regarding the witness' affiliation with insurance, but did allow him to be referred to as a "representative of the defense" who was hired by the defendants to investigate the plaintiffs' claim. *Id.* The Arizona Court of Appeals held, "The trial court properly concluded that the probative value of evidence of insurance was substantially outweighed by the danger of unfair prejudice. As the [plaintiffs] argue, the fact that he was employed by the [plaintiffs] permitted the [defendants] to argue the credibility of the witness Winn." *Id.* at 161, 673 P.2d at 801.

Likewise, in the instant case, Moss' alleged control or the expert witnesses' potential bias could have been exposed without injecting the factor of insurance had the trial judge restricted counsel to referring to Moss as the Selzers' representative rather than as an employee of Farm Bureau. After a review of the record, we can conclude only that the minimal probative value of Moss' testimony was substantially outweighed by the unnecessary prejudice injected into this trial by the reference to Farm Bureau. The reference to insurance was neither casual nor inadvertent in this matter. There is a substantial risk that once the jury learned that the Selzers' loss was likely covered by property insurance, the jury decided the issue of Nintendo's liability on the improper basis that the Selzers themselves suffered no great damage. See *Delicious Foods Co. v. Millard Warehouse*, 244 Neb. 449, 507 N.W.2d 631 (1993). Thus, we determine that the trial court abused its discretion in failing to exclude evidence that Moss was affiliated with Farm Bureau and that this error prejudiced Stumpf's right to a fair trial.

## CONCLUSION

For the foregoing reasons, we conclude that the district court abused its discretion in permitting Moss to disclose his employment with Farm Bureau and that this disclosure prejudiced Stumpf's right to a fair trial. We, therefore, reverse the judgment and remand this cause for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.