JODY RICHARDSON GITTINS, APPELLANT, V.
JEREL A. SCHOLL, APPELLEE.
601 N.W.2d 765

Filed October 29, 1999.   No. S-98-588.

Herbert J. Friedman and Jeffrey B. Lapin, of Friedman Law Offices, for appellant.

Con M. Keating and Gary L. Young, of Keating, O'Gara, Davis & Nedved, P.C., for appellee.

WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

Jody Richardson Gittins appeals a jury verdict of the district court for Lancaster County, in which the jury awarded her $6,500 in damages arising from an automobile collision involving Jerel A. Scholl. Gittins challenges, among other things, the adequacy of the verdict and the trial court's failure to admit Gittins' expert witness' opinion that her medical bills were necessitated as a result of injuries she sustained from the collision. We conclude that the trial court erred in sustaining Scholl's foundational objection to Gittins' expert witness' testimony regarding the necessity of Gittins' medical bills. Accordingly, we reverse, and remand for a new trial.

## BACKGROUND

This appeal arises from an automobile collision which occurred on March 10, 1994, in Lincoln, Nebraska. Gittins was

driving her automobile westbound on O Street when she began to slow with the traffic in front of her. Scholl was following approximately 1 to 1½ car lengths behind Gittins, at about 30 to 35 m.p.h. Scholl applied his brakes when he noticed the cars slowing in front of him, but was unable to stop his vehicle before running into the rear of Gittins' car.

Gittins commenced this action against Scholl, claiming that his negligence caused the collision and that she suffered injuries and sustained damages as a result. Gittins sought $38,550.68 in special damages, plus general damages and costs. Scholl admitted in his amended answer that his negligence was the proximate cause of the collision and that Gittins sustained some injury. Scholl denied, however, the nature, extent, and severity of those injuries.

Gittins introduced the videotaped deposition of Leo L. Meduna, M.D. Meduna was Gittins' family physician who treated her injuries from April 1994 until June 1997. Meduna testified that he saw Gittins 21 times over the course of her treatment. Although Meduna was the primary treating physician for Gittins, he referred her to several other health care providers for additional treatment. Meduna testified that he sent Gittins to a cardiologist, a physical therapist, and an orthopedist. These providers, in turn, referred Gittins to other health care providers, such as a sports medicine doctor and another physical therapist. Meduna testified that upon the suggestion of these other health care providers, he recommended that Gittins go to the University of Nebraska Medical Center's chronic pain center. Throughout this period of 3 years 4 months, Meduna continued to treat Gittins and was aware of the types of treatment and services provided by the other health care providers. At his deposition on August 6, 1997, Meduna testified that he had last seen Gittins on June 23. In his opinion, Gittins suffered from permanent, chronic, severe pain as a result of the collision with Scholl's vehicle.

On direct examination, Meduna was asked whether he had reviewed Gittins' medical bills compiled in deposition exhibit 5. At trial, deposition exhibit 5 was admitted into evidence as exhibit 24. To simplify matters, we shall refer to the exhibit in question as "exhibit 24." Meduna testified that he had reviewed

the bills and that he had an opinion, to a reasonable degree of medical certainty, whether the bills were necessitated by the collision with Scholl's vehicle. Scholl's counsel made a foundational objection which was sustained. Meduna's opinion on the necessity of the medical bills contained in exhibit 24, therefore, did not reach the jury.

## STANDARD OF REVIEW

The admission of expert testimony is ordinarily within the discretion of the trial court, and its ruling will be upheld in the absence of an abuse of discretion. *Woollen v. State*, 256 Neb. 865, 593 N.W.2d 729 (1999); *Lange v. Crouse Cartage Co.*, 253 Neb. 718, 572 N.W.2d 351 (1998).

## ANALYSIS

Gittins assigns that the trial court erred in failing to (1) admit expert opinion testimony on the necessity of Gittins' medical bills, (2) strike a juror for cause, and (3) grant a new trial on the basis of inadequate damages. Because we conclude that it was reversible error to sustain Scholl's objection to Gittins' expert witness' testimony, we need not reach the remaining two assignments of error. Therefore, we discuss only the trial court's decision to exclude Gittins' expert witness from testifying as to the necessity of Gittins' medical bills.

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by said rules; judicial discretion is involved only when the rules make such discretion a factor in determining admissibility. *Walkenhorst v. State*, 253 Neb. 986, 573 N.W.2d 474 (1998).

The requirements for admission of expert opinion testimony are found in Neb. Rev. Stat. § 27-702 (Reissue 1995). Section 27-702 provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

When asked by Gittins' counsel what foundation was lacking, Scholl's counsel stated: "The doctor, obviously, doesn't know all the work that was done and all the services provided and

22

there's not proper foundation." From this statement, the crux of Scholl's objection is clear: he did not consider Meduna to be familiar enough with the entirety of Gittins' treatment to render an opinion as to its necessity. Scholl did not object to Meduna's qualifications as an expert, nor did he object on the ground that expert testimony was not needed to assist the trier of fact. Scholl's objection as to lack of proper and sufficient foundation was a general objection. As noted, Meduna was Gittins' primary treating physician who saw her a total of 21 times over the course of her treatment. Therefore, we will consider Meduna a properly qualified expert witness whose testimony fell within § 27-702.

■ Additionally, under Neb. Rev. Stat. § 27-703 (Reissue 1995), an expert is allowed to base his or her opinion on data obtained before the hearing at which the expert is to testify. Specifically, § 27-703 provides:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those *perceived by or made known to him at or before the hearing.* If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

(Emphasis supplied.)

Meduna testified extensively on the various treatments received by Gittins since her accident with Scholl in March 1994. He described his treatment of her, as well as treatments provided by other health care providers upon his referral or recommendation or with his knowledge. He also testified that he reviewed the medical bills compiled in exhibit 24 before his deposition. As such, his opinion on the necessity of those bills would have been based on facts or data "perceived by or made known to him at or before the hearing," which is permissible under § 27-703.

■ Finally, Neb. Rev. Stat. § 27-705 (Reissue 1995) permits admission of an expert opinion without prior disclosure of the underlying facts upon which the expert's opinion is based. Specifically, § 27-705 provides that "[t]he expert may testify in terms of opinion or inference and give reasons therefor without prior disclosure of the underlying facts or data, unless the judge

requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination." Under § 27-705, then, an expert's opinion is ordinarily admissible if the witness (1) qualifies as an expert, (2) has an opinion that will assist the trier of fact, (3) states his or her opinion, and (4) is prepared to disclose the basis of that opinion on cross-examination. See R. Collin Mangrum, *Opinion and Expert Testimony in Nebraska*, 27 Creighton L. Rev. 85 (1993). Of course, § 27-705 allows the trial court to require the expert to disclose the facts underlying the opinion before it is stated. That, however, did not happen in this case where Meduna's testimony was presented by video deposition.

Meduna, Gittins' treating physician, was an expert witness familiar with the types of treatment that Gittins received from other health care providers. Gittins was entitled, therefore, under § 27-705 to have Meduna's opinion admitted. It then became Scholl's burden to challenge the foundational adequacy of Meduna's opinion on cross-examination. Scholl did not meet this burden. See *Tank v. Peterson*, 219 Neb. 438, 448, 363 N.W.2d 530, 537 (1985) ("experts having given their opinions and the bases thereof, it then became imperative for the defendants to establish that the experts' opinions were based on insufficient underlying facts or data. This simply was not done, and, as such, we hold that the trial court abused its discretion in striking the testimony of the plaintiffs' expert witnesses"). Therefore, the trial court erred in sustaining Scholl's objection and in keeping Meduna's testimony from the jury.

Scholl contends, however, that the trial court's decision to sustain his objection with respect to Meduna's opinion on the entire collection of medical bills contained in exhibit 24 is largely a moot point. Scholl argues that because Meduna testified to most of the bills individually, Gittins should have no complaint about the trial court's action with respect to those entries. We understand Scholl's argument in this respect to mean that if the trial court erred in sustaining his objection, it was harmless. We do not agree.

Scholl asserts that of the 23 bills contained in exhibit 24, the trial court ultimately allowed Meduna to testify that all but two of them were necessitated by Gittins' collision with Scholl.

Based on our reading of the record, however, there were eight bills, totaling approximately $10,000, that Meduna did not testify were necessitated by the collision. While we cannot say with certainty that the award for damages would have been higher had Scholl's objection been overruled, we likewise cannot say that the trial court's error had no adverse impact on the jury's deliberations. If the trial court had overruled Scholl's objection, the jury would have at least considered Meduna's expert opinion that another $10,000 of Gittins' medical bills were necessitated by the collision with Scholl's vehicle. For this reason, we cannot agree with Scholl's contention that the error was harmless.

We conclude, therefore, that the trial court committed reversible error when it sustained Scholl's objection to Gittins' expert witness' opinion as to the necessity of all the medical bills contained in exhibit 24. Accordingly, we reverse, and remand for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.

HENDRY, C.J., not participating.