IN RE APPLICATION OF SANITARY AND IMPROVEMENT
DISTRICT NO. 384 OF DOUGLAS COUNTY, NEBRASKA,
TO CERTAIN EASEMENTS IN DOUGLAS COUNTY, NEBRASKA,
BY EMINENT DOMAIN TO BE OWNED AND USED BY
CONDEMNOR FOR ITS CORPORATE PURPOSES.
SANITARY AND IMPROVEMENT DISTRICT NO. 384
OF DOUGLAS COUNTY, NEBRASKA, APPELLEE AND
CROSS-APPELLANT, V. BRUHNS PACKING COMPANY, APPELLANT
AND CROSS-APPELLEE, AND BANK OF ELKHORN ET AL., APPELLEES.

609 N.W. 2d 679

Filed April 27, 2000.    No. S-99-904.

Gregory C. Scaglione and Julie A. Schultz, of Koley, Jessen, Daubman & Rupiper, P.C., for appellant.

David L. Welch and Lisa M. Meyer, of Gaines, Mullen, Pansing & Hogan, for appellee SID No. 384.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

Bruhns Packing Company (BPC) appeals from an eminent domain award in the amount of $40,000. BPC asserts that it was not properly compensated for the taking of its land for public use because it was not allowed to introduce evidence regarding the loss of trees and grasses resulting from the condemnation.

## SCOPE OF REVIEW

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by said rules; judicial discretion is involved only when the rules make such discretion a factor in determining admissibility. *Gittins v. Scholl*, 258 Neb. 18, 601 N.W.2d 765 (1999).

To constitute reversible error in a civil case, the admission or exclusion of evidence must unfairly prejudice a substantial right of a litigant complaining about evidence admitted or excluded. *Sacco v. Carothers*, 257 Neb. 672, 601 N.W.2d 493 (1999).

A trial court has the discretion to determine the relevancy and admissibility of evidence, and such determinations will not be disturbed on appeal unless they constitute an abuse of that discretion. *Blue Valley Co-op v. National Farmers Org.*, 257 Neb. 751, 600 N.W.2d 786 (1999).

To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the appellant was prejudiced by the court's refusal to give the

tendered instruction, (2) the tendered instruction is a correct statement of the law, and (3) the tendered instruction is warranted by the evidence. *Hausman v. Cowen*, 257 Neb. 852, 601 N.W.2d 547 (1999).

## FACTS

In 1995, Sanitary and Improvement District No. 384 of Douglas County, Nebraska (SID #384), decided to construct an interceptor and outfall sanitary sewerline over, upon, and under BPC's property. Thereafter, SID #384 attempted to enter into an agreement with BPC as to the value of the acquisition of permanent and temporary easements, but the parties were unable to reach an agreement.

On May 9, 1995, SID #384 commenced condemnation proceedings, and a board of appraisers was appointed to assess the damages to BPC. The board's report found that BPC had sustained damages in the amount of $31,850. BPC subsequently appealed to the Douglas County District Court.

Prior to trial, SID #384 filed a motion in limine to prohibit BPC from offering evidence regarding the value of and damage to BPC's trees and grasses, and to prohibit the introduction of any evidence concerning settlement negotiations and precondemnation settlement offers to BPC. The motion was sustained. A trial was held, and a jury found that BPC had been damaged in the amount of $40,000.

On September 23, 1997, BPC filed an application requesting attorney fees, expert witness fees, prejudgment interest, and costs pursuant to Neb. Rev. Stat. §§ 25-1708 (Reissue 1995) and 76-711 and 76-720 (Reissue 1996). A hearing was held on the application, but BPC filed a notice of appeal before the district court ruled on the request for fees. We dismissed that appeal, since a request for an award of attorney fees in a condemnation case is considered part of the judgment and the order from which BPC had appealed was not final. See *In re Application of SID No. 384*, 256 Neb. 299, 589 N.W.2d 542 (1999).

On remand, BPC moved for additional attorney fees and costs incurred on appeal. The district court sustained BPC's original application for attorney fees, expert witness fees, prejudgment interest, and costs in part, but denied BPC's motion for attorney

fees and costs incurred on appeal to this court and denied BPC's motion to correct a typographical error in its September 23, 1997, application for fees, interest, and costs. BPC has timely appealed, and SID #384 cross-appeals.

## ASSIGNMENTS OF ERROR
BPC claims that the district court (1) abused its discretion by refusing to admit evidence of vegetation damages caused by the taking, (2) erred by refusing to give BPC's requested jury instructions regarding vegetation damages and by instructing the jury to disregard vegetation damages, (3) abused its discretion by refusing to admit evidence concerning SID #384's "Notice of Acquisition," (4) erred by dismissing BPC's cause of action concerning whether Neb. Rev. Stat. §§ 76-706 and 76-707 (Reissue 1996) are unconstitutional, and (5) abused its discretion by failing to sustain BPC's motion for attorney fees and costs incurred on appeal.

On cross-appeal, SID #384 argues that the district court erred in awarding attorney fees incurred by BPC prior to appealing its award to the district court and in awarding attorney fees incurred in contesting the constitutionality of §§ 76-706 and 76-707.

## ANALYSIS
■ We first address BPC's claim that the district court abused its discretion by refusing to admit evidence of vegetation damages caused by the taking. In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by said rules; judicial discretion is involved only when the rules make such discretion a factor in determining admissibility. *Gittins v. Scholl*, 258 Neb. 18, 601 N.W.2d 765 (1999). A trial court has the discretion to determine the relevancy and admissibility of evidence, and such determinations will not be disturbed on appeal unless they constitute an abuse of that discretion. *Blue Valley Co-op v. National Farmers Org.*, 257 Neb. 751, 600 N.W.2d 786 (1999). An abuse of discretion occurs when the trial judge's reasons or rulings are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Stumpf v. Nintendo of America*, 257 Neb. 920, 601 N.W.2d 735 (1999).

The issue presented is whether evidence offered by BPC regarding the loss of vegetation on the easements was properly excluded. In *Walkenhorst v. State*, 253 Neb. 986, 573 N.W.2d 474 (1998), we discussed how vegetation is to be considered in a condemnation action. In that case, the State of Nebraska, through the Department of Roads, acquired fee title and temporary and permanent easements by eminent domain to part of the Walkenhorsts' property. The Walkenhorsts were awarded $9,991 for the taking. They appealed, claiming they were improperly compensated because the trial court excluded their evidence regarding the value of a shelterbelt of trees located on the property. They asserted that this shelterbelt was separate property from the land and that article I, § 21, of the Nebraska Constitution entitled them to compensation for the shelterbelt apart from the taking of the land.

We stated that vegetation is generally not to be valued separately from the underlying land. The only relevant inquiry regarding vegetation was how the vegetation affected the fair market value of the land involved. Evidence of the value of vegetation was admissible only if such evidence could be related to the fair market value of the land.

BPC claims that its witness, Franklin C. Tate, Jr., a landscape engineer, should have been allowed to testify regarding the replacement cost of the trees and native grasses that were destroyed in the construction of the sewerline. As we explained in *Walkenhorst*, a condemnee is not entitled to introduce evidence regarding the replacement cost of trees and grasses. Such vegetation evidence is relevant only as to how the destruction affected the fair market value of the land.

In the case at bar, Tate was allowed to testify regarding how the trees and grasses affected the fair market value of the temporary and permanent easements. Tate described in detail the trees and grasses on the land before and after the construction of the sewerline. He testified that the existence of trees and erosion-controlling grasses can contribute positively to the fair market value of land and that the presence of vegetation is a factor which a reasonable purchaser may consider in determining the purchase price. Using the sales approach for valuing property, Tate opined that the estimated loss of value attributable to

the permanent easement was $32,865. He attributed $9,310 in damages to the temporary easements and $10,860 in damages to a piece of property which was bordered by the property line on the west and south sides and by the permanent easement on the east and north sides, which the parties labeled the "pinned property."

However, when Tate was asked to testify whether he had formed an opinion as to the difference in the fair market value of the property before and after construction of the sewerline, which was a consequence of the destruction of vegetation, SID #384 objected. The district court sustained the objection, and Tate was not allowed to testify regarding the value of the destroyed vegetation.

In an offer of proof, BPC placed a value on the loss of the vegetation and claimed that had Tate been allowed to testify further, he would have opined that the replacement cost of the lost vegetation was $54,000. Tate would also have testified that his evaluation of the damages caused by the permanent and temporary easements was calculated as if the land had no vegetation on it. Consequently, Tate would have stated that an additional $25,000 reduction in fair market value of the property was attributable to the loss of vegetation. Tate would have estimated the actual value of the lost trees and grasses at $20,000. During this offer of proof, BPC also stated that had Patrick Morrissey, an appraiser, been allowed to testify further, he would have testified that his damage calculation was also made without considering loss of vegetation.

SID #384 responded by indicating that Tate had testified regarding how the loss of vegetation affected the fair market value of the land and that "[a]nything over and above" this would be an improper measure of damages. SID #384 objected to Tate's and Morrissey's testimony on the grounds of "relevancy, rule 403, foundation and proper measure of damages."

We therefore consider whether the district court properly excluded the evidence described in BPC's offer of proof. The district court did not abuse its discretion when it refused to allow Tate's and Morrissey's testimony as to the replacement cost of the trees and grasses. The measure of damages for land taken for public use is the fair and reasonable market value of the land

actually appropriated plus the difference in the fair and reasonable market value of the remainder of the land before and after the taking. See *Walkenhorst v. State*, 253 Neb. 986, 573 N.W.2d 474 (1998). Tate was permitted to testify regarding the loss of the vegetation as it affected the fair market value of the land, but he was not permitted to place a separate value on the vegetation in addition to the diminution of the fair market value after the taking. Any reduction in the fair market value relating to the loss of the vegetation was already testified to when Tate opined that the loss of fair market value relating to the permanent easement was $32,865. He could not add $25,000 to this number, as was indicated in BPC's offer of proof. The replacement cost of the trees or their value separate and apart from the land is not a proper measure of damages.

BPC argues that temporary easements require a different measure of damages than the "before and after" comparison of the fair market value utilized for assessing damages for permanent easements. BPC's position is that in temporary takings, the condemnor is obliged to return the land in substantially the same condition as before the taking or provide the landowner compensation so as to return the land to substantially the same condition. BPC asks to be compensated for the replacement cost of the trees which were cut down on the temporary easements during construction of the sewerline.

We have not previously considered in respect to the taking of temporary easements whether a landowner is entitled to recover the costs of restoring the premises to its original condition. In *Gledhill v. State*, 123 Neb. 726, 243 N.W. 909 (1932), the State constructed a temporary bridge which interfered with the flow of a stream. Adjacent landowners complained when sections of their land were deprived of access to water. There, the measure of damages for the temporary taking was the value of use of the land for the period it was taken. The landowner was awarded the market value of the crops which the landowner would have harvested had the State not diverted the stream. This was determined to be the value of the loss of use of the property for the 1929 crop season. See, also, *Pierce v. Platte Valley Public Power and Irrigation District*, 143 Neb. 898, 11 N.W.2d 813 (1943).

In *Sacramento & San Joaquin Drainage Dist. v. Goehring*, 13 Cal. App. 3d 58, 91 Cal. Rptr. 375 (1970), the court recognized that the damages sustained by a temporary taking could be different from damages sustained by a permanent taking. The court noted that in addition to rental value for the period of the taking, the condemnee is entitled to recover the cost of restoration, provided the sum is not in excess of the diminution in value of the property caused by physical changes made by the condemnor during the period of its possession. See 4 Julius L. Sackman, Nichols on Eminent Domain § 12E.01 (rev. 3d ed. 1999). In *Goehring*, there had been a temporary easement for road purposes, and there was no evidence that the temporary taking diminished the market value of the remainder parcel. There was also no evidence of the reasonable rental value for use of the road. There, the court concluded that the damage for the temporary taking was the cost to restore the road.

Here, BPC offered evidence of the diminution in market value caused by the temporary easements. Tate calculated the amount of damages caused by the temporary easements as the diminution in market value in the amount of $9,310. BPC's experts did not utilize a separate measure of damages for the permanent taking from the temporary easements, except in terms of diminution in market value. The land which is the subject of the temporary easements was not used as rental property, nor was it a site for the growing of crops. Evidence was not presented by BPC as to any damage for the loss of use caused by the temporary taking. Instead, BPC offered evidence that the diminution in market value caused by the temporary taking was $9,310. Since BPC offered evidence of diminution of market value that was less than the damages for restoration, the measure of damages was the diminution in market value caused by the temporary taking.

BPC was not entitled to damages for both the diminution of market value and the cost of restoration. Since there was no evidence as to the damages for loss of use, BPC's damages were based upon the diminution in market value.

BPC next claims that the district court erred by refusing to give its requested jury instruction regarding vegetation damages. To establish reversible error from a court's refusal to give a

requested instruction, an appellant has the burden to show that (1) the appellant was prejudiced by the court's refusal to give the tendered instruction, (2) the tendered instruction is a correct statement of the law, and (3) the tendered instruction is warranted by the evidence. *Hausman v. Cowen*, 257 Neb. 852, 601 N.W.2d 547 (1999).

■ BPC did not include a copy of the tendered jury instruction in the appellate record for this appeal. It is incumbent upon the party appealing to present a record which supports the errors assigned; absent such a record, as a general rule, the decision of the lower court is to be affirmed. *Shearer v. Leuenberger*, 256 Neb. 566, 591 N.W.2d 762 (1999).

■ Although it is the appellant's burden to present the entire record to this court, in this case we have within our power the ability to correct this error. Copies of the proposed jury instructions are found in the appellate transcript of case No. S-97-1076, the earlier appeal regarding this matter which we dismissed for lack of a final, appealable order. See *In re Application of SID No. 384*, 256 Neb. 299, 589 N.W.2d 542 (1999). Where cases are interwoven and interdependent and the controversy involved has already been considered and determined by the court in a former proceeding involving one of the parties now before it, the court has a right to examine its own records and take judicial notice of its own proceedings and judgments in the former action. *Holste v. Burlington Northern RR. Co.*, 256 Neb. 713, 592 N.W.2d 894 (1999). The record for case No. S-97-1076 involves the same matter and the same parties as the present appeal. Thus, we judicially notice the record in case No. S-97-1076 so as to have a complete record regarding this appeal.

Proposed jury instruction No. 12 provided:

Where a taking causes damages to vegetation, the owner is entitled to be compensated for the cost to replace the vegetation to substantially the same condition it was in before the taking and use of the easements at the time of destruction plus the fair market value for the taking itself.

Proposed jury instruction No. 12A stated: "Where a taking causes damages to vegetation, the owner is entitled to be compensated for the value of the vegetation destroyed at the time of destruction plus the fair market value for the taking itself."

Proposed jury instruction No. 12B provided: "Where a taking causes damages to vegetation, the owner is entitled to be compensated for any decrease in the fair market value of the property to the extent that the decrease was proximately caused by the destruction to vegetation on the property."

Pursuant to our holding in *Walkenhorst v. State*, 253 Neb. 986, 573 N.W.2d 474 (1998), a condemnee is not entitled to replacement cost and separate valuation of vegetation. Proposed jury instructions Nos. 12 and 12A were not correct statements of the law, and thus there was no error in refusing to give them. There was also no error in failing to give instruction No. 12B, for the instruction may have misled the jury. It is apparent that the intent of jury instruction No. 12B, as submitted with instructions Nos. 12 and 12A, was to have the jury consider vegetation damages separate and apart from the decrease in fair market value. In that context, the wording of the instruction is such that the jury could have believed that BPC was entitled to a separate valuation of loss of fair market value specifically attributable to the loss of vegetation. This is not a correct statement of the law.

BPC also assigns as error that the district court instructed the jury to disregard vegetation damages. We assume that BPC is referring to the giving of jury instruction No. 14, which provided: "During this trial there have been references made to the damage of trees and grasses. For the purposes of your deliberations in this case, you are instructed that any reference or evidence of damage to trees or grasses is to be disregarded."

■ BPC did not object to this instruction at trial, and absent plain error indicative of a probable miscarriage of justice, the failure to object to a jury instruction after it has been submitted for review precludes raising an objection on appeal. See *State v. Greer*, 257 Neb. 208, 596 N.W.2d 296 (1999). However, it is the duty of a trial judge to instruct the jury on the pertinent law of the case, whether requested to do so or not, and an instruction or instructions which by the omission of certain elements have the effect of withdrawing from the jury an essential issue or element in the case are prejudicially erroneous. *Id.* Because BPC did not object to jury instruction No. 14 at trial, the issue is whether the instruction given was so deficient as to constitute plain error, which we have defined as error of such a nature that to leave it

uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. See *id.*

We find no plain error in the reading of jury instruction No. 14. When the instruction is read in light of all the other jury instructions, it can properly be interpreted as directing the jury to disregard any evidence regarding the loss of vegetation separate and apart from the fair market value of the land.

Next, BPC claims that the district court abused its discretion by refusing to admit evidence concerning SID #384's notice of acquisition. In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by said rules; judicial discretion is involved only when the rules make such discretion a factor in determining admissibility. *Gittins v. Scholl*, 258 Neb. 18, 601 N.W.2d 765 (1999). To constitute reversible error in a civil case, the admission or exclusion of evidence must unfairly prejudice a substantial right of a litigant complaining about evidence admitted or excluded. *Sacco v. Carothers*, 257 Neb. 672, 601 N.W.2d 493 (1999).

On January 31, 1995, SID #384 sent BPC a notice of acquisition, informing BPC of the proposed acquisition of property owned by BPC. The notice stated that "[t]his notice is given, pursuant to Section 25-2503, at least forty-five (45) days before beginning negotiations for such acquisition." The notice explained that SID #384 intended to construct a sewerline over BPC's property and that SID #384 would need temporary and permanent easements. The notice then explained that the total compensation to be paid for such property would be $41,562.50, representing $22,875 for the permanent easement and $18,687.50 for the temporary easements. Attached to this notice was a document entitled "Public Notice" which set forth the date and location of a public hearing. The notice then explained:

> At the hearing, Sanitary and Improvement District No. 384 . . . will explain the nature of and the necessity for the projects for which it seeks to acquire property . . . the right of each owner of property to be represented by an attorney and to negotiate and accept or reject the offer of damages which will be sustained by the proposed acquisition, and the right to require that such damages be determined pursuant to the procedures for acquisition by eminent domain.

In a motion in limine, SID #384 sought an order instructing BPC to refrain from offering into evidence documentation or testimony about settlement negotiations and precondemnation settlement offers by SID #384 and to refrain from referring to, implying, or mentioning such negotiations and offers. BPC argued that the notice of acquisition should have been admitted because it was an offer to purchase the condemned land and was evidence of the fair market value. SID #384 objected to the admission of the notice of acquisition as irrelevant, unduly prejudicial, and inadmissible under Neb. Rev. Stat. § 27-408 (Reissue 1995) as a settlement offer. The district court found these objections persuasive and excluded the evidence.

Section 27-408 provides:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

BPC contends the notice of acquisition should be treated as an offer to purchase, for at the time the notice was sent, there was no dispute between the parties. SID #384 argues that the amount of compensation stated in the notice of acquisition should not be admitted, since the condemnor is statutorily required to provide this information.

Neb. Rev. Stat. § 25-2503 (Reissue 1995) provides, in part, that "[a]ny agency which proposes to acquire private property for a public purpose shall give notice of such proposed acquisition at least forty-five days before beginning *negotiations* for such acquisition." (Emphasis supplied.) Neb. Rev. Stat § 25-2504

(Reissue 1995) requires that the condemnee must be told at a hearing that the condemnee has the right "to negotiate and accept or reject the offer of damages" provided in the notice.

In *Prairie View Tel. Co. v. County of Cherry*, 179 Neb. 382, 138 N.W.2d 468 (1965), we explained that prior to initiating an eminent domain proceeding, the county was required to make a good faith offer and a reasonable attempt to induce a settlement. Citing Neb. Rev. Stat. § 76-704 (Reissue 1996), we held that this requirement is mandatory and jurisdictional. Likewise, Neb. Rev. Stat. § 76-702 (Reissue 1996) provides that the condemnor may take land for public use only "[a]fter negotiations have failed . . . ."

In *Moody's Inc. v. State*, 201 Neb. 271, 272, 267 N.W.2d 192, 193 (1978), we stated: " 'The burden is upon the condemner to allege and prove that before commencing condemnation proceedings a good faith attempt was made to agree with the owner of the land as to the damages the owner was entitled to receive. . . .' " This requirement is in the nature of a condition precedent to the right to condemn. *Id.* "[S]tatements made by the condemnor in statutorily-required negotiations between the condemnor and the landowner prior to resort[ing] to condemnation proceedings are privileged." 5 Julius L. Sackman, Nichols on Eminent Domain § 18.12[2] at 18-92 (rev. 3d ed. 1999).

We conclude that the district court did not abuse its discretion when it refused to allow the notice of acquisition into evidence, for the notice constitutes a privileged communication between SID #384 and BPC during statutorily required negotiations. By statute, the condemnor and the landowner are required to attempt to enter into a settlement prior to commencing the condemnation action. Thus, the district court properly characterized the notice of acquisition as a settlement offer and excluded the evidence pursuant to § 27-408. See, also, *State ex rel. Miller v. Superior Court*, 189 Ariz. 228, 941 P.2d 240 (Ariz. App. 1997) (appellate court concluded that appraisal had been prepared for purpose of negotiating stipulation between landowner and state, and thus, rule 408 precluded its admission).

BPC asserts that the district court erred by dismissing its claim that §§ 76-706 and 76-707 are unconstitutional. However, BPC did not file a written notice in compliance with Neb. Ct. R.

of Prac. 9E (rev. 1996), which imposes a specific notice requirement on parties seeking to challenge the constitutionality of a statute on appeal. See *State v. Feiling*, 255 Neb. 427, 585 N.W.2d 456 (1998). Since the record in this case contains no separate written notice, we do not consider BPC's contention that the district court erred in failing to hold §§ 76-706 and 76-707 as unconstitutional.

Finally, BPC argues that the district court abused its discretion by failing to sustain its motion for attorney fees and costs incurred on appeal. Attorney fees and expenses may be recovered only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees. *Zimmerman v. FirsTier Bank*, 255 Neb. 410, 585 N.W.2d 445 (1998).

Section 76-720 provides:

> If an appeal is taken from the award of the appraisers by the condemnee and the amount of the final judgment is greater by fifteen percent than the amount of the award . . . the court may in its discretion award to the condemnee a reasonable sum for the fees of his or her attorney and for fees necessarily incurred for not more than two expert witnesses.

An abuse of discretion occurs when the trial judge's reasons or rulings are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Stumpf v. Nintendo of America*, 257 Neb. 920, 601 N.W.2d 735 (1999).

Section 76-720 allows a condemnee to recover attorney fees if an appeal results in an increase in the amount of the award. Such a result did not occur on appeal to this court in *In re Application of SID No. 384*, 256 Neb. 299, 589 N.W.2d 542 (1999). Instead, we dismissed that appeal for lack of jurisdiction. In light of these circumstances, we find no abuse of discretion in denying BPC's request for attorney fees and costs incurred it its earlier appeal to this court.

On cross-appeal, SID #384 argues that the district court erred in awarding attorney fees incurred by BPC prior to the time that BPC appealed its award to the district court and attorney fees incurred in contesting the constitutionality of §§ 76-706 and 76-707.

We have long held that an award pursuant to § 76-720 is conditional and that the services of attorneys and expert witnesses must be related to the accomplishment of the conditions precedent stated in § 76-720, to wit: securing a final judgment on appeal greater by 15 percent than the amount of the award. See *Johnson v. Nebraska Public Power Dist.*, 187 Neb. 421, 191 N.W.2d 594 (1971). In *Johnson*, we stated that § 76-720 does not permit the award of attorney fees in eminent domain proceedings for services rendered prior to bringing an appeal in the district court.

Attorney fees and expenses may be recovered only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees. *Zimmerman v. FirsTier Bank, supra.* Thus, the district court abused its discretion when it awarded BPC attorney fees incurred prior to appealing to the district court and for litigation of the issue of whether §§ 76-706 and 76-707 are constitutional, since the constitutionality of these statutes does not relate to the goal of increasing an award on appeal as contemplated by § 76-720.

## CONCLUSION

Having reviewed BPC's assigned errors and finding them each to be without merit, we affirm in part. However, because we find merit in SID #384's cross-appeal, we reverse the district court's award of attorney fees and remand the cause so that the court may recalculate BPC's attorney fees award in a manner consistent with this opinion.

BPC has filed a motion for attorney fees and costs incurred in pursuing this appeal. Said motion is overruled.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.